# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. 2:09-CR-35 |
| | ) | (2:14-CV-7) |
| JOSHUA WAMPLER, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on the Motion Under 28 U.S.C. Section 2255 To Vacate, Set Aside, Or Correct Sentence By a Person in Federal Custody, filed by Joshua Wampler on January 7, 2014 (DE #649). For the reasons set forth below, the section 2255 motion is **DENIED**. The Clerk is **ORDERED** to **DISMISS** this case **WITH PREJUDICE**. Furthermore, this Court declines to issue a certificate of appealability.

BACKGROUND

On September 17, 2009, a Superseding Indictment was filed against Joshua Wampler ("Wampler") and six other defendants. Wampler was charged in Counts One and Eight of the nine count Superseding Indictment. Count One charged Wampler and others with

conspiring to distribute heroin, and Count Eight charged Wampler with substantive heroin distribution in violation of 21 U.S.C. §§ 841(a)(1), 846.

On March 23, 2010, Wampler entered into a plea agreement with the Government, and the agreement was filed with this Court. In it, Wampler agreed to plead guilty to Count One of the Superseding Indictment. The Government and Wampler also reached certain agreements that were not binding on the Court. Specifically, they agreed that if Wampler continued to accept responsibility for his criminal conduct, he should receive a two point, and if eligible, an additional one point reduction in his Guideline offense level. They also agreed that the Government would recommend a sentence equal to the minimum of the applicable guideline range. Wampler agreed that his attorney had "done all that anyone could do to counsel and assist [him]," that he was offering his guilty plea "freely and voluntarily and of [his] own accord," that "no promises [had] been made to [him] other than those contained in [the] agreement," and that he had not been "threatened in any way by anyone to cause [him] to plead guilty in accordance with [the] agreement." (DE #180, ¶¶ 11-12.)

This Court held a change of plea hearing on March 24, 2010.

During that Rule 11 hearing,[1] Wampler was placed under oath and was advised that any false statements could later be used against him. When asked whether he had ever been treated for any mental illness or addiction to drugs of any kind, Wampler responded only that he had been in rehabilitation for drug use in the past but that nothing about those treatments would "in any way prohibit [him] or give [him] a problem with being about to proceed" with the plea hearing. (DE #330, pp. 7-8.) The Court specifically questioned Wampler about medications:

> Q. Mr. Wampler, are you presently under the influence of any drug or medication or alcoholic beverage of any kind?
> A. No narcotics. I take Depakote.
> Q. And does that cause you to become sleepy or drowsy?
> A. No, sir.
> Q. Does that in any way prohibit you from being able to proceed with today's hearing?
> A. No, sir.

(*Id*. at 8-9.) Wampler confirmed that he wished to plead guilty to Count One, that he was doing so knowingly and voluntarily, and that no one had made any promises, assurances, or threats to him regarding his choice to plead guilty. The Court explained the penalties that Wampler was facing, and Wampler confirmed that he understood those penalties. Wampler also acknowledged that he understood that the Court would not make a determination as to an

---

[1]  The transcript of the plea hearing is found at DE #330.

appropriate sentence until after the Presentence Investigation Report ("PSR") was prepared by the probation department and the parties had had an opportunity to challenge the PSR. The Court went over the general impact of the sentencing guidelines and each of the non-binding recommendations in detail. With regard to acceptance of responsibility, the Court and Wampler had the following exchange:

> Q. Another factor, and a very, very important factor, it's whether or not you have accepted responsibility for the commission of the crime to which you're pleading guilty. That's an important factor, Mr. Wampler, because depending upon the circumstances, you can either get a minus two or a minus three points. The lower the number of point[s], the smaller the guideline range, that's in your favor. Do you understand that?
> A. Yes, Your Honor.
> Q. Now, you may ask me, 'How do I show acceptance of responsibility?' Very simple. One, by continuing to admit all of your involvement in the crime including relevant conduct. Do you understand that?
> A. Yes, Your Honor.
> Q. Two, by not giving me different stories about what occurred; three, by not being involved in any more crimes or any further crimes; and, four, by not attempting to withdraw your plea of guilty. Do you understand that?
> A. Yes, Your Honor.
>                     . . .
> Q. Okay. Let's go back to these nonbinding recommendations. [The] [f]irst nonbinding recommendation that you and the Government are going to make is that you should get the maximum deduction of points for acceptance of responsibility. Do you understand that?

A. Yes, Your Honor.

Q. Now, the Government is going to make this recommendation, Mr. Wampler, as long as you continue to demonstrate acceptance of responsibility. You start lying, you start giving different stories about what occurred, you start being involved in any other crimes, or you start attempting to withdraw your plea of guilty, they don't have to make the recommendation. And if they don't make the recommendation for those reasons, not only will they not make the recommendation, you will not be allowed to withdraw your plea of guilty or your plea agreement. Do you understand that?

A. Yes, Your Honor.

Q. Mr. Wampler, even if you, your attorney, and the Government all recommend that you get acceptance of responsibility, who makes the final decision?

A. You do, Your Honor.

Q. That's right. And I may agree with all of you. I may not. I will have the final say. Do you understand that?

A. Yes, sir.

Q. Are you in agreement with that?

A. Yes, sir.

(*Id.* at 18-20.)

The Court also discussed the appellate waiver in detail with Wampler as follows:

Q. Okay. Let's go on to subparagraph D. That talks about appeals, Mr. Wampler. Do you understand that in all criminal cases, a defendant has a right to appeal his conviction and/or sentence in a case? Do you understand that?

A. Yes, Your Honor.

Q. In this case, you have acknowledged that I have the jurisdiction and authority to sentence you up to the maximum provided for by the statute. Do you understand that?

A. Yes, Your Honor.

Q. And I told you that before when I said you were facing up to life in prison, a fine of up to $4 million, or a combination of both of those, up to life supervised release, and a $100 special assessment. Do you understand that?

A. Yes, Your Honor.

Q. Mr. Wampler, basically what you're doing in this paragraph is you're giving up all of your rights to an appeal, either the manner in which you were found guilty or any sentence that you may receive. Do you understand that?

A. Yes, Your Honor.

Q. For all practical purposes, Mr. Wampler, that's all of your rights to an appeal. There's a few that you can't give up. One of them is jurisdiction. Do you understand that?

A. Yes, Your Honor.

Q. Do you understand that the Government is not giving up any of their rights to an appeal?

A. Yes, Your Honor.

Q. Down the road, if you don't like the sentence that you get and you think it's too high, Mr. Bosch won't be able to appeal it. Do you understand that?

A. Yes, sir.

Q. Or if you don't like some of the rulings that I made in the case, Mr. Bosch won't be able to appeal that for all practical purposes. Do you understand that?

A. Yes, sir.

Q. You sure this is what you want to do?

A. Yes, sir.

Q. And you understand that once I grant it, you won't be able to reverse and say, 'I changed my mind.'

A. Yes, sir.

Q. Anybody force you to do this?

A. No, sir.

Q. Are you doing it knowingly and voluntarily?

A. Yes, sir.

Q. Did you talk to your attorney and discuss it fully with him?

A. Yes, sir, I did.

Q. Do you have any questions of the Court?
                A. No, sir.
                Q. And are you asking me to approve it as part
                of your plea agreement?
                A. Yes, Your Honor.
                Q. Let's go on to subparagraph C. That deals
                with your right to give up – I'm sorry. Let me
                back up back to this waiver of appeal. That
                also includes giving up your right to appeal
                on the basis of incompetence of counsel except
                as it relates to the negotiation of this
                waiver. Do you understand that?
                A. Yes, Your Honor.

(*Id*. at 21-23.)

        Wampler then proceeded to describe how he knowingly

participated in the conspiracy to obtain heroin in Chicago,

Illinois and distribute it in Porter County, Indiana.  After the

Government had provided its statement in support of a violation of

21 U.S.C. sections 841(a)(1) and 846, Wampler stated that he agreed

with the Government's statement of facts.  The Court accepted

Wampler's guilty plea and adjudged him guilty.

        On September 14, 2010, the Court received a letter from

Wampler indicating that he wished to fire his attorney, Michael W.

Bosch ("Attorney Bosch"), and withdraw his plea of guilty.

Wampler claimed that Attorney Bosch had "lied to [him], misled

[him], made promises to [him], and out and out tricked [him] into

signing the plea [agreement]."  (DE #311.)  The Court held a

hearing on September 30, 2010,[2] at which the concerns in Wampler's letter were addressed. After thoroughly questioning Wampler about his desires and intentions, advising him of his rights, and reviewing the transcript of the initial plea hearing with him, the Court concluded that the testimony given by Wampler during the change of plea hearing was truthful and that the testimony afterwards was not. Therefore, his request to withdraw his guilty plea was denied. The Court then warned Wampler of the ramifications of firing his counsel but ultimately granted his request to terminate Attorney Bosch. However, the Court ordered Attorney Bosch to remain in the case as standby counsel.

The sentencing hearing was initially set for January 28, 2011, but was continued to March 24, 2011. Wampler represented himself for several months leading up to the date of the sentencing hearing, yet on February 17, 2011, he sent the Court a letter asking to have Attorney Bosch reappointed as his primary counsel. The Court granted that request and ordered Attorney Bosch to look into any relevant sentencing issues.

After several continuances, the sentencing hearing commenced on June 1, 2012. During that hearing, the Court *sua sponte* requested that the parties argue whether Wampler should be given

---

[2] The transcript of the hearing is found at DE #571.

credit for acceptance of responsibility. Attorney Bosch requested a continuance in order to prepare for the argument, and the sentencing hearing was continued to July 30, 2012. At that hearing, the Court denied to give Wampler credit for acceptance of responsibility, finding that he had been untruthful in attempting to withdraw his guilty plea. Wampler was sentenced to a term of imprisonment of 151 months followed by a five year term of supervised release. Judgment was entered on August 1, 2012.

On August 9, 2012, Wampler, through Attorney Bosch, filed a timely notice of appeal.[3] The Seventh Circuit Court of Appeals dismissed Wampler's appeal on April 15, 2013, noting that the appellate waiver in the plea agreement was enforceable because the transcript from the plea hearing demonstrated that Wampler had knowingly and voluntarily pleaded guilty. See *United States v. Zitt*, 714 F.3d 511, 515 (7th Cir. 2013).

On January 7, 2014, Wampler filed the instant motion pursuant to section 2255 in which he alleges that Attorney Bosch was ineffective because he: (1) "refused to challenge the validity of a last-minute career offender enhancement"; (2) told Wampler that he "could not fight the drug weight" and that his "co-defendants

---

[3] Wampler initially filed a pro se notice of appeal on August 1, 2012, but Attorney Bosch later filed a notice of appeal for him. Wampler's pro se notice of appeal was later voluntarily dismissed.

signed the same plea"; and (3) had a conflict of interest due to the fact that he worked for the Lake County Sheriff's Department during the pendency of Wampler's case. (DE #649.) Wampler also argues that his "psych meds" (Depakote and Elavil) prevented him from knowingly and voluntarily entering into his guilty plea. (*Id.*) After several requests for an extension, the Government filed a response on May 1, 2014. Almost a year later, on March 9, 2015, the Court received a letter from Wampler indicating that he had not received the Government's response and requesting an extension of time within which to file a reply. In the interests of justice, the Court granted Wampler's request and ordered him to file a reply by April 24, 2015. On March 27, 2015, Wampler filed his reply. The motion is thus ripe for adjudication.


DISCUSSION

Habeas corpus relief under 28 U.S.C. section 2255 is reserved for "extraordinary situations." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996). In order to proceed on a habeas corpus motion pursuant to 28 U.S.C. section 2255, a federal prisoner must show that the district court sentenced him in violation of the Constitution or laws of the United States, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. *Id.*

10

A section 2255 motion is neither a substitute for nor recapitulation of a direct appeal. *Id.; Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992), *overruled on other grounds by Castellanos v. United States*, 26 F.3d 717 (7th Cir. 1994). As a result:

> [T]here are three types of issues that a section 2255 motion cannot raise: (1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) nonconstitutional issues that could have been but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal, unless the section 2255 petitioner demonstrates cause for the procedural default as well as actual prejudice from the failure to appeal.

*Belford*, 975 F.2d at 313. Additionally, aside from demonstrating "cause" and "prejudice" from the failure to raise constitutional errors on direct appeal, a section 2255 petitioner may alternatively pursue such errors after demonstrating that the district court's refusal to consider the claims would lead to a fundamental miscarriage of justice. *McCleese v. United States*, 75 F.3d 1174, 1177 (7th Cir. 1996).

In assessing Wampler's motion, the Court is mindful of the well-settled principle that, when interpreting a pro se petitioner's complaint or section 2255 motion, district courts have a "special responsibility" to construe such pleadings liberally. *Donald v. Cook County Sheriff's Dep't*, 95 F.3d 548,

555 (7th Cir. 1996); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (a

"pro se complaint, 'however inartfully pleaded' must be held to

'less stringent standards than formal pleadings drafted by

lawyers'") (quoting *Haines v. Kerner*, 404 U.S. 519 (1972)); *Brown

v. Roe*, 279 F.3d 742, 746 (9th Cir. 2002) ("[p]ro se habeas

petitioners are to be afforded 'the benefit of any doubt'")

(quoting *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)).

In other words:

> the mandated liberal construction afforded to
> pro se pleadings 'means that if the court can
> reasonably read the pleadings to state a valid
> claim on which the [petitioner] could prevail,
> it should do so despite the [petitioner's]
> failure to cite proper legal authority, his
> confusion of various legal theories, his poor
> syntax and sentence construction, or his
> unfamiliarity with pleading requirements.'

*Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999) (habeas

petition from state court conviction) (alterations in original)

(quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

On the other hand, "a district court should not 'assume the role

of advocate for the pro se litigant' and may 'not rewrite a

petition to include claims that were never presented.'" *Id.* The

Court has assessed Wampler's claims with these guidelines in mind.

Preclusive Effect of Plea Agreement Waiver

As noted above, Wampler's plea agreement contains an appeal waiver, in which Wampler has agreed to waive appeal of his conviction and sentence. A "[w]aiver is the intentional relinquishment or abandonment of a known right." *United States v. Sumner*, 265 F.3d 532, 537 (7th Cir. 2001). The Seventh Circuit has consistently stated that valid appellate waivers are to be upheld. *United States v. Woolley*, 123 F.3d 627, 631 (7th Cir. 1997). "For an appeal waiver to be valid, it must be express and unambiguous, and the record must clearly demonstrate that it was made knowingly and voluntarily." *Id*. at 632 (citations and internal quotation marks omitted). When deciding the validity of an appeal waiver, courts may look to the language of the plea agreement as well as the colloquy at the plea hearing. *Id*. See also *United States v. Wenger*, 58 F.3d 280, 282 (7th Cir. 1995) ("Most waivers are effective when set out in writing and signed.").

Specifically with regard to a section 2255 motion, the Seventh Circuit has held that a waiver to file such a motion contained in a plea agreement is enforceable if the waiver itself is: (1) knowing and voluntary; and (2) if the defendant cannot establish a claim for ineffective assistance of counsel in connection with negotiating the agreement. *Mason v. United States*, 211 F.3d 1065, 1068-69 (7th Cir. 2000); *Jones v. United States,* 167 F.3d 1142,

1145 (7th Cir. 1999). Thus, it must be determined if Wampler waived his rights knowingly and voluntarily and whether he has established a claim for ineffective assistance of counsel in connection with negotiating the agreement.

*Wampler Entered Into the Waiver Knowingly and Voluntarily*

As noted above, courts enforce a plea agreement's waiver "if its terms are clear and unambiguous and the record shows that the defendant knowingly and voluntarily entered into the agreement." *United States v. Blinn*, 490 F.3d 586, 588 (7th Cir. 2007). Courts may consider a defendant's signature on the plea agreement and his statements during the plea colloquy as evidence of a knowing and voluntary waiver. *United States v. Jemison*, 237 F.3d 911, 917–18 (7th Cir. 2001).

Wampler's plea agreement contains the following appellate waiver:

> I understand that the law gives a convicted person the right to appeal the conviction and the sentence imposed; I also understand that no one can predict the precise sentence that will be imposed, and that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for my offense(s) as set forth in this plea agreement; with this understanding and in consideration of the government's entry into this plea agreement, I expressly waive my right to appeal or to contest my conviction and my sentence and any restitution order imposed or the manner in which my conviction

14

> or my sentence or the restitution order was
> determined or imposed, to any Court on any
> ground, including any claim of ineffective
> assistance of counsel unless the claimed
> ineffective assistance of counsel relates
> directly to this waiver or its negotiation,
> including any appeal under Title 18, United
> States Code, Section 3742 or any post-
> conviction proceeding, including but not
> limited to, a proceeding under Title 28,
> United States Code, Section 2255.

(DE #180, ¶ 7(d).) Wampler and Attorney Bosch both signed the plea agreement, and it is undisputed that the waiver itself is clear and unambiguous. During the change of plea hearing, Wampler was placed under oath and was asked whether there were any mental issues or medications that prohibited him in any way from being able to proceed with the hearing. Wampler replied that there were not. When specifically asked about medications, Wampler replied that he was currently taking Depakote but confirmed that it did not "cause [him] to become sleepy or drowsy" or prohibit him in any way from being able to proceed with his change of plea. (DE #330, pp. 8-9.)

At the Court's prompting, Wampler read the waiver provision to himself. Furthermore, upon questioning from the Court, Wampler agreed under oath that he had previously read the waiver with Attorney Bosch, that he understood it, and that he agreed with it. As noted in more detail above, the Court explained the terms of the waiver in open court, noting that Wampler was "giving up all

of [his] rights to an appeal, either the manner in which [he was] found guilty or any sentence that [he would] receive," and Wampler confirmed that he made the decision to waive those rights knowingly and voluntarily and that no one forced him to do so; he also indicated that he had no questions about the waiver. (*Id.* at 22-23.)

Following the Court's careful explanation of the consequences of pleading guilty, a factual basis was set forth for Wampler's guilty plea, he agreed with the prosecution version of the facts, and he pleaded guilty. The Court then found that the plea was entered knowingly and voluntarily and supported by an independent basis in fact containing each of the essential elements of the offense.

From this evidence, the Court is satisfied that the appeal waiver is enforceable. See *Jemison*, 237 F.3d 911 at 917. Because Wampler knowingly and voluntarily entered into the plea agreement, and because all of its provisions -- including the waivers -- were explained to him at the change of plea hearing without any requests for further clarification or disagreement, he is bound by it. Given this Court's finding that the waiver provision in his plea agreement is enforceable, Wampler's section 2255 motion must fail unless he points directly to ineffective negotiation that would have rendered the entire plea agreement invalid or fundamentally

unfair for the Court to enforce. Wampler argues that Attorney
Bosch was ineffective in several respects, and the Court will
address each claim in turn below.[4]


Wampler's Ineffective Assistance of Counsel Claims

Claims of ineffective assistance of counsel are governed by
the two-pronged test set forth in *Strickland v. Washington,* 466
U.S. 668 (1984). To prevail on an ineffective assistance of
counsel claim, a defendant must show that the specific acts or
omissions of his attorney "fell below an objective standard of
reasonableness" and were "outside the wide range of professionally
competent assistance." *Barker v. United States*, 7 F.3d 629, 633
(7th Cir. 1993) (quoting *Strickland*, 466 U.S. at 688, 690); *see
also Hardamon v. United States*, 319 F.3d 943, 948 (7th Cir. 2003);
*Anderson v. Sternes*, 243 F.3d 1049, 1057 (7th Cir. 2001). The
second *Strickland* prong requires defendant to show prejudice,

---

[4] The Court notes that, after this motion was filed, the Attorney General
directed all federal prosecutors to refrain from seeking appellate waivers of
ineffective assistance of counsel going forward. See Office of the Deputy
Att'y Gen., Memorandum to all Federal Prosecutors: Dep't Policy on Waivers of
Claims of Ineffective Assistance of Counsel (Oct. 14, 2014) available at
http://www.justice.gov/sites/default/files/press-
releases/attachments/2014/10/15/dept-policy-on-waivers-of-claims-of-
ineffective-assistance-of-counsel.pdf. For waivers that existed prior to
October 14, 2014, the Attorney General stated that the Government should
simply decline to enforce the waiver to block that claim. *Id.* The DOJ's
change in policy, however, did not alter the law, and in the Seventh Circuit,
waivers such as this one remain enforceable. See *United States v. Roach*, 600
Fed. Appx. 472, 473 (7th Cir. 2015).

which entails showing by "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Regarding the deficient-performance prong, great deference is given to counsel's performance, and the defendant has a heavy burden to overcome the strong presumption of effective performance. *Id.* at 690; *Coleman v. United States*, 318 F.3d 754, 758 (7th Cir. 2003) (citation omitted). A defendant must establish specific acts or admissions that fell below professional norms. *Strickland*, 466 U.S. at 690. If one prong is not satisfied, it is unnecessary to reach the merits of the second prong. *Id.* at 697.

The Seventh Circuit has held that "[o]nly those habeas petitioners who can prove under *Strickland* that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ." *Canaan v. McBride*, 395 F.3d 376, 385-86 (7th Cir. 2005). Additionally, trial counsel "is entitled to a 'strong presumption' that his performance fell 'within the range of reasonable professional assistance' and will not be judged with the benefit of hindsight.'" *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007) (citing *Strickland*, 466 U.S. at 689).

To establish prejudice in the pleading context, a defendant

must show that "but for counsel's erroneous advice, he would not have pleaded guilty." *Hays v. United States*, 397 F.3d 564, 568 (7th Cir. 2005) (quoting *Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000)). To do so, he cannot merely insist that he would have gone to trial; "he must also come forward with objective evidence that he would not have pled guilty." *Hutchings v. United States*, 618 F.3d 693, 697 (7th Cir. 2010) (citing *United States v. Cieslowski*, 410 F.3d 353, 359 (7th Cir. 2005)).

*Career Offender Status Objection*

Wampler first argues that Attorney Bosch was ineffective because he failed to challenge his status as a career offender. According to Wampler, in an early version of the PSR, the probation department deemed him a career offender, and Attorney Bosch told Wampler that they had "no grounds to fight it." (DE #649, p. 14.) Due to Attorney Bosch's alleged refusal to help fight the career status designation, Wampler claims that he was forced to fire Attorney Bosch and attempt to withdraw his plea, which eventually led to the loss of acceptance of responsibility during sentencing.

As an initial matter, the Court notes that Attorney Bosch's alleged actions or inactions in response to a draft of the PSR are not related to the voluntariness of the waiver or the negotiation

of the plea agreement. Whether Attorney Bosch chose to "fight" the career offender designation once the PSR was issued, which was several months after the plea negotiations took place, is irrelevant to the question at hand. As noted above, Wampler is bound by the appeal waiver unless he is able to point directly to an ineffective negotiation that rendered the plea invalid; his argument regarding the career offender status issue has not established this, so the claim is waived.

Even if Wampler was able to overcome the plea waiver, his argument fails on the merits. It is true that an initial version of the PSR listed Wampler as a career offender. However, as the Government points out, it is undisputed that the final version of the PSR did not categorize Wampler as a career offender under U.S.S.G. section 4B1.1 and that this Court did not sentence Wampler as a career offender at his sentencing hearing. (See e.g. DE #589, p. 4; see also PSR dated June 9, 2011.) Because the career offender designation did not apply to Wampler and his sentence was not enhanced in any way by it, he has not established that he was prejudiced by Attorney Bosch's alleged failure to challenge the initial PSR. See *United States v. Taylor*, 569 F.3d 742, 748 (7th Cir. 2009) ("Courts may deny ineffective assistance of counsel claims for lack of prejudice without ever considering the question

20

of counsel's actual performance.").

*Statements Allegedly Made by Attorney Bosch Regarding Wampler's Criminal History, Drug Weight and Co-Defendants' Plea Agreements*

Next Wampler argues that Attorney Bosch was ineffective because he allegedly told Wampler "over and over" that he would not be found to be a career offender, that the drug weight assigned to him could not be contested, and that all of his co-defendants had signed the same plea agreements. (DE #649, p. 7.) Wampler alleges that Attorney Bosch "guaranteed [him] a life sentence if [he] didn't take this plea bargain." (*Id.*) The Government argues that, even if Attorney Bosch did indeed make these representations, Wampler has failed to establish that the alleged statements from Attorney Bosch amount to deficient performance or resulted in any prejudice to him. In his reply brief, Wampler states that he "will not respond to this issue at this time." (DE #694.) Assuming for the moment that Wampler has not forfeited this issue by failing to reply to the Government's arguments, Wampler may pursue the claim despite the waiver outlined above because it relates to the negotiation of the plea agreement.

However, the Court need not delve too deeply into the matter

because Wampler's claims are flatly contradicted by his testimony at the change of plea hearing. It is undisputed that Wampler knew what sentence he was potentially facing. He was advised of the possible penalties at his initial appearance on March 3, 2009, and again on September 29, 2009, after the superseding indictment was filed. The plea agreement itself set forth Wampler's possible penalties. The Court advised Wampler of the possible penalties in detail at the change of plea hearing, including the fact that this Court was not bound by the parties' recommendations and that he could receive a sentence up to the statutory maximum of life imprisonment. Wampler indicated that he had fully discussed the charges against him and the penalties outlined in the plea agreement with Attorney Bosch prior to the hearing, and he indicated that he was fully satisfied with Attorney Bosch's counsel, representation, and advice. More importantly, Wampler confirmed that no one, including Attorney Bosch, had "made any other or different promise or assurance to [him] of any kind in an effort to induce or cause [him] to enter a plea of guilty in this case." (DE #330, p. 30.) When Wampler sent the Court a letter indicating that he wished to withdraw his plea of guilty because Attorney Bosch had allegedly lied to him regarding the plea agreement and sentencing terms, a hearing on the matter was held.

After fully reviewing the evidence, hearing testimony, and
evaluating Wampler's credibility, the Court found that the
testimony given by Wampler during the change of plea hearing was
truthful and that Wampler's subsequent allegations and testimony
were not.

In the instant motion, Wampler now argues that Attorney Bosch
"lied, tricked, and coerced [him] into signing the plea" by making
promises with regard to the effect of his criminal history on his
sentence, the options related to the weight of the drugs, and the
existence and terms of the plea agreements of his co-defendants.
(DE #649, p. 14.)  However, he has not put forth any competent
evidence suggesting that this is the case.  A defendant's
statements given under oath during a plea colloquy are presumed to
be true.  *United States v. Redmond*, 667 F.3d 863, 870 (7th Cir.
2012).  "Because of the great weight we place on these in-court
statements, we credit them over [defendant's] later claims."
*United States v. Martinez*, 169 F.3d 1049, 1054 (7th Cir. 1999).
The Court will not allow Wampler to rewrite history in order to
undercut the provisions to which he willingly agreed.  *Id.* (citing
United States *v. Byrd*, 669 F. Supp. 861 (N.D. Ill. 1987)).  See
also *United States v. Pike*, 211 F.3d 385, 389 (7th Cir. 2000)
(representations made by the defendant during a change of plea

hearing are "entitled to a presumption of verity.").[5]

Furthermore, as the Government points out, Wampler is not able to establish actual prejudice with regard to this claim. To do so, Wampler must provide "probative, objective evidence" that he would not have pled guilty but for Attorney Bosch's conduct; "[t]he mere allegation . . . that he would have insisted on going to trial is insufficient to establish prejudice." *Hutchings*, 618 F.3d at 697 (citations and internal quotation marks omitted). Not only has Wampler failed to establish that Attorney Bosch did not learn the facts of the case or provide a good-faith estimate of a likely sentence, *Cieslowski*, 410 F.3d at 359, he has also not asserted that he is innocent of the crime he pled guilty to. In fact, even after bringing Attorney Bosch's alleged "lies, tricks, and coercions" to the Court's attention via letter, during a hearing on the matter Wampler unequivocally stated that he was guilty of the crime charged. When asked by this Court whether he had testified during the change of plea hearing that he was guilty

---

[5] Furthermore, "[w]hen a district court conducts a Rule 11 colloquy, it is not putting on a show for the defendant, the public, or anybody else. The purpose of a Rule 11 colloquy is to expose coercion or mistake, and the district judge must be able to rely on the defendant's sworn testimony at that hearing. Because the court takes a criminal defendant's rights at a change-of-plea hearing very seriously, it is reasonable to expect, and demand, that the criminal defendant do so as well. For that reason, a defendant is normally bound by the representations he makes to a court during the colloquy." *Hutchings*, 618 F.3d at 699 (internal quotation marks and citations omitted).

of the charged crime, Wampler indicated that he had.  He went on to state that, "I was guilty of a crime.  I am not saying that I'm not guilty of a crime."  (DE #571, p. 15.)  Ultimately, Wampler was sentenced to 151 months on Count One, and cannot show that but for Attorney Bosch's conduct, it is reasonably probable that the results of the proceeding would have been different.  See *Pole v. Randolph*, 570 F.3d 922, 934 (7th Cir. 2009).

*Conflict of Interest*

Wampler also alleges that Attorney Bosch was ineffective because his "working for the Lake County Sherriff's Department at the same time he represented [him] without his consent" constituted an impermissible conflict of interest.  (DE #649, p. 5.)  In his reply brief, Wampler states that he has "numerous conflicts of interest with Lake County Sheriffs" and would not want to be represented by anyone associated with the Department for fear of their bias.  (DE #694, p. 4.)  He alleges that Attorney Bosch was "also a cop at the time of his defense."  (*Id*. at 5.)  As with the claim that Attorney Bosch was ineffective for failing to object to his career offender designation, Wampler has not established that this claim is related to the negotiation of the plea agreement in any way, so it is waived.

Moreover, even assuming it was not waived, it fails on the merits. As noted by the Seventh Circuit Court of Appeals:

> [t]here are two ways to assert a claim based on counsel's conflict of interest. One, under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the petitioner may show that his attorney had a potential conflict of interest and that the potential conflict prejudiced his defense; or two, the petitioner may proceed under *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), where he must establish a violation 'by showing that 'an *actual* conflict of interest adversely affected his lawyer's performance.'" *Stoia* [*v. United States*, 22 F.3d 766, 770 (7th Cir. 1994)] (quoting *Sullivan*, 446 U.S. at 348, 100 S.Ct. 1708) (emphasis added).

*Hall v. United States*, 371 F.3d 969, 973 (7th Cir. 2004). Because Wampler did not notify the Court of the alleged conflict prior to sentencing and because he has not presented any evidence or argument that the potential conflict resulted in actual prejudice, the Court assumes that Wampler is attempting to proceed under *Cuyler*. Under *Cuyler*, a defendant must show "*both* an 'actual conflict of interest' and an adverse effect on lawyer's performance." *Stoia*, 22 F.3d at 770 (emphasis in original) (citation omitted). If a defendant can satisfy both prongs of this test, prejudice will be presumed. *Id*. at 770-71. An actual conflict of interest exists if an attorney is forced to make a decision that would place his or her personal interests over that

of the client. *Id*. at 771. An adverse effect results when there is a "lapse in representation contrary to the defendant's interests. . . ." *Id*. (internal quotation marks and citations omitted). A defendant must present "specific instances where counsel could and would have done something different[ly]" absent the conflict. *Griffin v. Camp*, 40 F.3d 170, 173 (7th Cir. 1994) (citing *Thompkins v. Cohen*, 965 F.2d 330, 332 (7th Cir. 1992)).

Here, Wampler alleges vaguely that he has a "history" with the Lake County Sherriff's Department that causes him to believe Attorney Bosch was biased against him in some unspecified way. The Government argues that, while it is undisputed that Attorney Bosch was employed by Lake County as an Assistant Public Defender to assist with civil cases during the time in question, such employment does not in any way suggest there was an actual conflict with his representation of Wampler's Federal drug conspiracy case.[6]

The Court agrees with the Government. Wampler has not identified any instances in which Attorney Bosch's alleged bias manifested itself. It is not reasonable to infer that Attorney Bosch's work on civil cases pertaining to the Lake County Sherriff's Department would force him to make a decision advancing his own

---

[6] The Government points out that the Lake County Sheriff's Department was not involved in the conspiracy investigation of the case at bar.

interests to the detriment of Wampler.  Nor is there any indication
in the record that Attorney Bosch's employment adversely impacted
his performance on Wampler's case in any manner.  This claim is
meritless.

Wampler's Medications

Finally, Wampler argues that the medications he was taking
prevented him from knowingly and voluntarily entering his guilty
plea.  As noted in detail above, this claim is belied by the
record.  To begin with, the record does not contain any medical
evidence that Wampler's "psych meds" caused him cognitive issues
that would render him incompetent.  The Court specifically asked
Wampler about his medication usage during the change of plea
hearing, and Wampler indicated that the Depakote did not affect
him in any way with respect to voluntarily entering a plea of
guilty.  Wampler stated that the medication neither caused him to
become sleepy or drowsy nor prohibited him from being able to
proceed with the hearing.  The Court carefully observed Wampler's
demeanor throughout, and there was no indication that Wampler
failed to understand the proceedings or the significance of his
plea.  See *United States v. Walker*, 447 F.3d 999, 1004 (7th Cir.
2006) ("The only rational manner in which a judge may determine
whether a plea is knowingly and voluntarily made, is to observe

the defendant's demeanor and responses to the court's questions and to rely on the defendant's sworn answers.")

Furthermore, as the Government points out, Wampler procedurally defaulted on this claim because he failed to raise the issue on direct appeal. "A claim cannot be raised for the first time in a § 2255 motion if it could have been raised at trial or on direct appeal." *McCoy v. United States*, 815 F.3d 292, 295 (7th Cir. 2016) (citing *Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009)). To obtain such review, a petitioner must show good cause for not raising the claim earlier and that he would suffer actual prejudice for the default. *Hale v. United States*, 710 F.3d 711, 713 (7th Cir. 2013); *Gant v. United States*, 627 F.3d 677, 683 (7th Cir. 2010). "[E]ven the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." *Bousley v. United States*, 523 U.S. 614, 621 (1998).

Wampler never specifically asked the Seventh Circuit Court of Appeals to challenge his guilty plea on the basis of involuntariness due to his medication usage. Although Wampler states that he did not raise this issue on direct appeal because Attorney Bosch also acted as his appellate counsel, this does not establish good cause for the failure. Moreover, Wampler has not

shown actual prejudice because, as noted above, even after attempting to withdraw his plea of guilty many months after the change of plea hearing, he admitted that he was guilty of the crime. See *McCoy*, 815 F.3d at 295 ("Absent a showing of both cause and prejudice, procedural default will only be excused if the prisoner can demonstrate that he is 'actually innocent' of the crimes of which he was convicted.")


Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings, a district court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue only if the applicant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. ' 2253(c)(2). To make such a showing, a defendant must show that "reasonable jurists could debate whether (or, for that matter, agree that) the motion should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted).

For the reasons set forth above, Wampler has not stated any

grounds for relief under section 2255. The Court finds no basis for a determination that reasonable jurists would find this decision debatable or incorrect or that the issues deserve encouragement to proceed further. Therefore, a certificate of appealability will not be issued.

CONCLUSION

For the aforementioned reasons, the section 2255 motion is **DENIED**. The Clerk is **ORDERED** to **DISMISS** this case **WITH PREJUDICE**. Furthermore, this Court declines to issue a certificate of appealability.

DATED: March 27, 2017                    /s/ RUDY LOZANO, Judge
                                         United States District Court